UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

VICTOR ORTIZ,

                       Plaintiff,

       - v. -

THE CITY OF NEW YORK,
DETECTIVE SCOTT COTE,
DETECTIVE MICHAEL CALLOWAY,
DETECTIVE PAUL SLATER,
DETECTIVE GUILLERMO GIL,
DETECTIVE MICHAEL DOMINGUEZ,
POLICE OFFICER JOHN DOE,
SERGEANT NICOLE TIRADO, individually
and in their official individual capacity as New
York City Police Officers,

                       Defendants.

-------------------------------------------------------------------X

Case No. 17 Civ. 2920

**COMPLAINT**

**JURY TRIAL
DEMANDED**

       Plaintiff VICTOR ORTIZ by and through his attorneys, Perlmutter &
McGuinness, P.C., alleges as follows:

## PRELIMINARY STATEMENT

       1.     This is an action to recover monetary damages arising out of
Defendants' violations of Plaintiff's rights secured by the Civil Rights Act, 42 U.S.C.
§ 1983, and of rights secured by the First, Fourth, and Fourteenth Amendments to
the United States Constitution.  Plaintiff was deprived of his constitutional rights
when Defendants unlawfully assaulted, battered, arrested and caused the
prosecution of Plaintiff.

2.     This action arises out of conduct by Defendants, which led to the unlawful attack and arrest of Plaintiff and the prosecution of Plaintiff by representatives of the New York County District Attorney's Office, who are not parties to this action.

3.     Defendants, acting under the color of state law, have intentionally and willfully subjected Plaintiff to, *inter alia*, harassment, arrest, assault, battery, selective enforcement of the law, false imprisonment and detention.

4.     Defendants used excessive force and assaulted and battered Plaintiff while affecting an unlawful arrest causing physical injuries requiring medical treatment.

5.     Defendants unlawfully arrested and detained Plaintiff in retaliation for Plaintiff's lawful exercise of free speech and assembly, and in violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights under the United States Constitution, 42 U.S.C. § 1983, and the laws of New York State.

## JURISDICTION

6.     This is a civil action authorized by 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and the aforementioned statutory and constitutional provisions.

## VENUE

7.      The Southern District of New York is an appropriate venue under 28 U.S.C. §§ 1391(a), (b) and (c), and 1402(b) because the events giving rise to this claim occurred in New York County.  In addition, Defendants conduct business and maintain their principal places of business in New York County.

## JURY DEMAND

8.      Plaintiff demands a trial by jury on each of his claims that can be tried to a jury.

## THE PARTIES

9.      Plaintiff, VICTOR ORTIZ, is a 27-year-old citizen of the United States, and is, and was at all times relevant herein, a resident of the City of New York, State of New York.

10.      Defendants DETECTIVE SCOTT COTE (hereafter "DET. COTE"), DETECTIVE MICHAEL CALLOWAY (hereafter "DET. CALLOWAY"), DETECTIVE PAUL SLATER (hereafter "DET. SLATER"), DETECTIVE GUILLERMO GIL (hereafter "DET. GIL"), DETECTIVE MICHAEL DOMINGUEZ (hereafter "DET. DOMINGUEZ"), POLICE OFFICER JOHN DOE (hereafter "OFFICER DOE"), and SERGEANT NICOLE TIRADO (hereafter "SGT. TIRADO"), are and were at all times relevant herein officers, employees, and agents of the New York City Police Department (hereafter "NYPD").  DET. COTE, DET. CALLOWAY,

DET. SLATER, DET. GIL, DET. DOMINGUEZ, OFFICER DOE, and SGT.
TIRADO, are being sued herein individually and in their official capacity.

11.     Defendant CITY OF NEW YORK is a municipal entity created and
authorized under the laws of the State of New York.  The NYPD is a municipal
agency of the CITY OF NEW YORK.  Pursuant to N.Y.C. Charter § 396, the CITY
OF NEW YORK is the party to be named in an action for the recovery of penalties
for the violations stated herein.

12.     At all times relevant herein, DET. COTE, DET. CALLOWAY, DET.
SLATER, DET. GIL, DET. DOMINGUEZ, OFFICER DOE, and SGT. TIRADO were
acting under the color of state law, to wit, under color of the statutes, ordinances,
regulations, policies, customs, and usages of the CITY OF NEW YORK, in the
course and scope of their duties and functions as agents, servants, employees, and
officers of the NYPD and otherwise performed and engaged in conduct incidental to
the performance of their lawful functions in the course of their duties.  They acted
for and on behalf of the NYPD at all times relevant herein, with the power and
authority vested in them as officers, employees, and agents of the NYPD.  At all
times relevant herein, the NYPD hired, employed, supervised, and controlled DET.
COTE, DET. CALLOWAY, DET. SLATER, DET. GIL, DET. DOMINGUEZ,
OFFICER DOE, and SGT. TIRADO.

## FACTS

### The Arrest and Prosecution

13.     On June 12, 2015, at approximately 7:45am, DET. COTE, DET. CALLOWAY, DET. SLATER, DET. GIL, DET. DOMINGUEZ, OFFICER DOE, and SGT. TIRADO, executed a search warrant at 60 East 102nd Street, Apartment 12A in the State and County of New York.

14.     Plaintiff and his mother, Ms. Rodriguez, who lives at 60 East 102nd Street, Apartment 12A, exited the elevator and approached the apartment so that Plaintiff could use the restroom.

15.     Directly across from the elevator door is a wall with the floor number listed.  On each end of the wall, there is a hallway.  To see the apartment doors, one must turn either left or right and enter one of the hallways.

16.     When Plaintiff and his mother exited the elevator, they did not see any police officers.

17.     Plaintiff and his mother turned left out of the elevator and entered the hallway and saw that the door to Apartment 12A was ajar.

18.     SGT. TIRADO opened the door to the apartment and asked Plaintiff if Plaintiff lived there.

19.     Plaintiff explained to SGT. TIRADO that Plaintiff used to live there and showed SGT. TIRADO a family portrait on the wall.

20.     Plaintiff then asked SGT. TIRADO if Plaintiff could use the restroom.

21.     SGT. TIRADO told Plaintiff that Plaintiff could not enter the apartment and that Plaintiff needed to leave.

22.     DET. CALLOWAY then came from inside the apartment and also approached the front door.

23.     SGT. TIRADO then asked Plaintiff's mother if she lived in the apartment.

24.     Ms. Rodriguez replied, "yes," and asked SGT. TIRADO if SGT. TIRADO had a warrant.

25.     SGT. TIRADO ignored Ms. Rodriguez and immediately placed her in handcuffs.

26.     Plaintiff was walking down hallway away from the apartment, and stopped when his mother was arrested and asked DET. COTE, who had also exited the apartment, why Ms. Rodriguez was being arrested.

27.     Plaintiff's questions were ignored.

28.     Neither Plaintiff nor Ms. Rodriguez were ever shown a warrant.

29.     DET. SLATER also entered the hallway.

30.     Plaintiff, who was down the hall from his mother, asked DET. CALLOWAY why his mother was being arrested.

31.     Plaintiff was ignored again.

32.     Plaintiff then took out his cell phone and began filming the officers, while continuing to ask for an explanation for his mother's arrest.

33.     Plaintiff told the officers repeatedly that his mother was sick, and Plaintiff wanted to know why she was being arrested.

34.     The officers told Plaintiff that Plaintiff could wait outside.

35.     Upon information and belief, DET. COTE motioned to Plaintiff's camera and said, "You can film . . . that's [inaudible].  One more time, you are too close, step back."

36.     Plaintiff was at all times down the hallway, 10 to 15 feet away from the officers and his mother.

37.     Plaintiff, who had still not been shown the search warrant, asked, "What is the probable cause for arrest?"

38.     Immediately thereafter, DET. CALLOWAY, who had rushed down the hallway towards Plaintiff, grabbed onto Plaintiff's arm and attempted to remove Plaintiff's camera from Plaintiff's hands.

39.     DET. CALLOWAY and DET. COTE proceeded to use their bodies to shepherd Plaintiff around the corner, where Plaintiff could no longer film or witness the incident.

40.     Plaintiff repeatedly requested that the officers use "no force."

41.     Plaintiff held his arm around the corner to continue to film the arrest. At this point Plaintiff was 15 to 18 feet away from the arrest.

42.     DET. COTE and DET. CALLOWAY repeatedly told Plaintiff to "step back," even though Plaintiff remained approximately 15 to 18 feet away from his mother and the arresting officers.

43.     DET. CALLOWAY then approached Plaintiff and repeatedly yelled, "Leave the area.  Leave the area.  Are you going to leave the area, yes or no?"

44.     Plaintiff then asked if Plaintiff was required to leave "by law."

45.     DET. CALLOWAY responded, "Yes, by law."

46.     DET. CALLOWAY then grabbed the hand in which Plaintiff held his cell phone and jerked Plaintiff's arm behind Plaintiff's back.

47.     Plaintiff felt a sharp pain in his hand and dropped his phone to the ground.

48.     Upon information and belief, DET. CALLOWAY grabbed Plaintiff's other arms and twisted it behind Plaintiff's back.

49.     Upon information and belief, DET. CALLOWAY then pushed Plaintiff's legs, causing Plaintiff to fall forward onto the ground.

50.     Plaintiff broke his fall with his shoulder.

51.     Upon information and belief, DET. COTE and DET. CALLOWAY then jumped onto Plaintiff's back and held him to the ground.

52.     While Plaintiff was on the floor, Plaintiff felt one of the officers repeatedly kicking Plaintiff's leg.

53.     Det. Calloway then put handcuffs on Plaintiff.

54.     The officers then grabbed Plaintiff by the arms and put Plaintiff into a standing position.

55.     Plaintiff was brought down the elevator and put into the back of a police van, without air conditioning, for over an hour.

56.     The officers took Plaintiff to the precinct to be processed.

57.     When Plaintiff was being walked into the precinct, another officer, OFFICER DOE, told Plaintiff that asking for a lawyer or for medical attention would "slow down the process."

58.     Plaintiff was told that Plaintiff would be released more quickly if he did not seek medical attention or the advice of legal counsel.

59.     In fact, Plaintiff was held for almost 24 hours.

60.     Plaintiff was arrested and charged on June 12, 2015 with second-degree Obstructing Governmental Administration (New York Penal Law § 195.05) and Resisting Arrest (New York Penal Law § 205.30).

61.     Plaintiff made several court appearances before he was tried before a jury and found not guilty.

### The NYPD's Practice of Violating the
### First Amendment Rights of Individuals to Record Police Officers

62.     The widespread popularity of smartphones has placed advanced camera and recording equipment into the hands of everyday citizens.  In the wake of *Floyd v. City of New York*, 08-Civ-1034 (SAS), ECF No. 373 and other highly publicized incidents of police misconduct, citizens have directed their cameras directly at police officers, documenting any wrongdoing on film.

63.     Paralleling an increase in citizen-made police recordings is an upsurge of lawsuits suing police officers who have interfered with individuals' First Amendment rights to record or attempt to record police activity.  *See An v. City of*

*New York*, No. 16 Civ. 5381 (S.D.N.Y. July 6, 2016); *Beckford v. City of New York*,

No. 16 Civ. 2261 (S.D.N.Y. Mar. 28, 2016); *John et al. v. Demaio*, No. 15 Civ. 6094

(E.D.N.Y. Oct. 22, 2015); *Delorbe-Bell v. City of New York*, No. 15 Civ. 2344

(S.D.N.Y. Mar. 30, 2015); *Goodman v. City of New York,* No. 14 Civ. 5261 (S.D.N.Y.

July 15, 2014); *Charles v. City of New York*, No. 12 Civ. 6180 (E.D.N.Y. Dec. 17,

2012);

64.    The NYPD has not instituted proper training, monitoring, or

supervision to ensure that police officers comply with individuals' First Amendment

right to record police activity or refrain from violating the NYPD's own directives

and patrol guide.  Plaintiff's First Amendment rights were violated as a direct

result of these deficiencies.

65.    The CITY OF NEW YORK knew, or should have known, based on the

numerous lawsuits filed against the NYPD for unconstitutional police interference

in the recording, by individuals, of police conduct.  The CITY OF NEW YORK has a

pattern of practice and policy allowing viloations of citizens' rights who film officers

making arrests.  The CITY OF NEW YORK has failed to take affirmative, corrective

action  to stop this pattern of practice, which constitutes deliberate indifference to

the NYPD's widespread deprivation of constitutional rights to the citizens of New

York.

<u>Plaintiff's Physical and Mental Injuries</u>

66.    Since the arrest, where several police officers jumped onto Plaintiff's

back, Plaintiff has suffered from severe lower back pain.

67.     Plaintiff also suffers from intense shoulder pain, resulting from having to use his shoulder to break his fall onto the ground.

68.     Immediately after the arrest, Plaintiff had large bruises on his back, shoulder, and legs.

69.     Because of the arrest, Plaintiff no longer trusts the police and is now fearful of interacting with them.

70.     Plaintiff's uncle is a police officer.  As a result of his false arrest, Plaintiff's relationship with his uncle has changed dramatically.  Plaintiff cannot help but associate his uncle with the same unlawful police conduct that lead to Plaintiff's false arrest.

71.     During his prosecution, Plaintiff's fiancé became pregnant with their first child.  Although he was trying to save money for his new child, Plaintiff was forced to repeatedly miss work for court appearances.  Plaintiff is an hourly-wage earner and does not receive paid time off.

72.     Throughout the prosecution, the state kept Plaintiff's cell phone in evidence.

73.     Plaintiff relies on his phone for work.  He uses the phone to communicate to his crews where their next job will be.  He also uses the phone to navigate to job sights, update customers about project progress, and take photos of the work.  Plaintiff had to rely on a borrowed flip phone that did not have navigation or photo capabilities.  Plaintiff continued to pay the phone bill even while the phone was in the state's custody.

74.    Plaintiff's arrest and prosecution effectively chilled and infringed upon his exercise of his First Amendment rights.  Thus, Plaintiff suffered injury as a result of defendants' conduct.

## FIRST CAUSE OF ACTION
### (Freedom of Speech and Assembly
### Violation — Federal Claim)

75.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 78 with the same force and effect as if more fully set forth at length herein.

76.    DET. COTE and DET. CALLOWAY assaulted, battered, and arrested Plaintiff in retaliation for Plaintiff's reasonable exercise of his First Amendment protected speech and assembly in violation of Plaintiff's rights under the First Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

77.    Plaintiff suffered physical, mental, emotional, and financial injuries, as a result of DET. COTE's and DET CALLOWAY's violation of Plaintiff's rights. DET. COTE and DET. CALLOWAY are liable to Plaintiff under 42 U.S.C. §§ 1983 and 1985.

78.    DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the violation of Plaintiff's First Amendment rights of protected speech and assembly.

## SECOND CAUSE OF ACTION
### (Freedom of Speech and Assembly
### Violations — State Claim)

79.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 78 with the same force and effect as if more fully set forth at length herein.

80.      DET. COTE and DET. CALLOWAY assaulted and arrested Plaintiff in retaliation for Plaintiff's reasonable exercise of his right to free speech under the New York State Constitution Article 1, § 1, and his right to assemble under the New York State Constitution Article 1, § 8.

81.     Plaintiff suffered the physical, mental, emotional, and financial injuries as a result of DET. COTE's and DET. CALLOWAY's violation of Plaintiff's rights, and, as such, both are liable to Plaintiff.

82.     DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the violation of Plaintiff's New York State Constitutional rights to freedom of speech and assembly.

## THIRD CAUSE OF ACTION
### (Unlawful Seizure — Federal Claim)

83.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 82 with the same force and effect as if more fully set forth at length herein.

84.     DET. COTE and DET. CALLOWAY arrested Plaintiff without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizure and the Fourteenth Amendment right to Due Process.

85.     Plaintiff suffered the physical, mental, emotional, and financial injuries as a result of Defendants' deprivation of Plaintiff's civil, constitutional and statutory rights, and are liable under 42 U.S.C. §§ 1983 and 1985.

86.     DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the unlawful seizure of Plaintiff.

## FOURTH CAUSE OF ACTION
### (Excessive Force — Federal Claim)

87.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in 1 through 86 with the same force and effect as if more fully set forth at length herein.

88.     During DET. COTE's and DET. CALLOWAY's unlawful arrest of Plaintiff, they employed unnecessary and unreasonable force in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

89.     As a proximate result of their use of excessive force, the officers caused Plaintiff to suffer serious physical, psychological, and emotional pain and suffering, and Plaintiff was otherwise damaged and injured.

-14-

90.     DET. COTE and DET. CALLOWAY deprived Plaintiff of his civil, constitutional, and statutory rights and is liable to Plaintiff under 42 U.S.C. §§ 1983 and 1985.

91.     DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the use of excessive force against Plaintiff.

### FIFTH CAUSE OF ACTION
(Excessive Force/Negligence — State Claim)

92.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 91 with the same force and effect as if more fully set forth at length herein.

93.     DET. COTE and DET. CALLOWAY, while acting as agents and employees for the CITY OF NEW YORK, in their capacity as officers in the NYPD owed a duty to Plaintiff to perform their police duties without the use of excessive force.  DET. COTE's and DET. CALLOWAY's use of force upon Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or injury to DET. COTE or DET. CALLOWAY or to others, constitutes negligence for which DET. COTE and DET. CALLOWAY are individually liable.

94.     DET. COTE's and DET. CALLOWAY's use of force upon Plaintiff when they had no lawful authority to arrest Plaintiff or use force against Plaintiff constitutes negligence for which they are individually liable.

95.     As a proximate result of DET. CALLOWAY's and DET. COTE's negligent use of excessive force, Plaintiff suffered serious physical, psychological, and emotional pain and suffering, and otherwise damaged and injured Plaintiff.

96.     DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the use of excessive force against Plaintiff.

## SIXTH CAUSE OF ACTION
### (Assault)

97.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 96 with the same force and effect as if more fully set forth at length herein.

98.     By the conduct and actions described above, DET. COTE and DET. CALLOWAY inflicted the tort of assault upon Plaintiff.  The acts and conduct of DET. COTE and DET. CALLOWAY were the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

99.     DET. COTE's and DET. CALLOWAY's conduct against Plaintiff constituted an assault upon Plaintiff in that DET. COTE and DET. CALLOWAY attempted to injure Plaintiff or commit battery upon him, placing Plaintiff in fear of imminent harm, and further that their acts represented a grievous affront to Plaintiff.

100.   DET. COTE's and DET. CALLOWAY's actions were intentional, reckless, and unwarranted, and without any just cause or provocation, and they knew, or should have known, that their actions were without the consent of Plaintiff.

101.   DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the assault on Plaintiff.

## SEVENTH CAUSE OF ACTION
### (Battery)

102.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 101 with the same force and effect as if more fully set forth at length herein.

103.   DET. COTE's and DET. CALLOWAY's conduct against Plaintiff constituted a battery upon Plaintiff in that the above-described bodily contact was intentional, unauthorized, and grossly offensive in nature.

104.   Such contact caused serious physical, psychological, and emotional pain and suffering, and otherwise caused damage to Plaintiff.

105.   DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the battery on Plaintiff.

## EIGHTH CAUSE OF ACTION
### (Malicious Prosecution — Federal Claim)

106.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 105 with the same force and effect as if more fully set forth at length herein.

107.   Following Plaintiff's arrest, DET. COTE did not make a full and complete statement of the facts to the District Attorney.

108.   DET. COTE was directly and actively involved in the initiation of criminal proceedings against Plaintiff.  DET. COTE acted with malice initiating and continuing the criminal proceedings against Plaintiff.

109.   As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, was humiliated, and subjected to handcuffing and other physical restraints without probable cause.

110.   Plaintiff suffered physical injury, extreme mental and emotional anguish as a result of DET. COTE's wrongful actions.  Plaintiff's reputation was damaged, Plaintiff suffered lost earnings, among other things, as a result of the DET. COTE 's deliberate and malicious conduct.

111.   The acts and conduct of DET. COTE deprived Plaintiff of his liberty without Due Process of Law in violation of his Fourteenth Amendment Rights. DET. COTE is liable to Plaintiff under 42 U.S.C. §§ 1983 and 1985.

112.   DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the malicious prosecution of Plaintiff.

## NINTH CAUSE OF ACTION
### (Malicious Prosecution — State Claim)

113.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 112 with the same force and effect as if more fully set forth at length herein.

114.   The acts and conduct of DET. COTE constitute malicious prosecution under statutory and common law of the State of New York, and, as such, DET. COTE is liable to Plaintiff.

115.   DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the malicious prosecution of Plaintiff.

## TENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

116.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 115 with the same force and effect as if more fully set forth at length herein.

117.   DET. COTE's and DET. CALLOWAY's conduct, in assaulting, battering, and unlawfully arresting Plaintiff, without provocation or justification,

was extreme, outrageous, and utterly intolerable in a civilized community, and manifested conduct that exceeded all reasonable bounds of decency.

118.   DET. COTE's and DET. CALLOWAY's conduct, described above, was intended to and did cause severe physical, psychological, and emotional distress to Plaintiff.

119.   DET. COTE's and DET. CALLOWAY's conduct was the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

120.   As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to physical, psychological, and emotional pain and suffering, and was otherwise damaged and injured.

121.   DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the intentional infliction of emotion distress on Plaintiff.

## ELEVENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

122.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 121 with the same force and effect as if more fully set forth at length herein.

123.    DET. COTE's and DET. CALLOWAY's conduct, in assaulting, battering, and unlawfully arresting Plaintiff, was careless and negligent as to the emotional health of Plaintiff, and caused severe emotional distress to Plaintiff.

124.    DET. COTE's and DET. CALLOWAY's conduct was the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

125.    As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to serious physical, psychological, and emotional pain and suffering, and was otherwise damaged and injured.

126.    DET. SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO aided and abetted DET. COTE and DET. CALLOWAY by participating in, observing and failing to intervene in the negligent inflection of emotional distress on Plaintiff.

## TWELFTH CAUSE OF ACTION
### (Negligent Hiring, Retention, Training, and Supervision)

127.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 126 with the same force and effect as if more fully set forth at length herein.

128.    The CITY OF NEW YORK, acting through the NYPD and its agents, servants and employees acting within the scope of their employment did negligently hire, retain, train, and supervise DET. COTE, DET. CALLOWAY, DET. SLATER,

DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO, who were unfit for

the performance of police duties on June 12, 2015, at the aforementioned location.

As such, the CITY OF NEW YORK is liable to Plaintiff for the negligent hiring,

retention, training, and supervision of DET. COTE, DET. CALLOWAY, DET.

SLATER, DET. GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO.

### THIRTEENTH CAUSE OF ACTION
(*Respondeat Superior* Liability
For State Law Claims)

129.    Plaintiff repeats, reiterates, and realleges each and every allegation

contained in paragraphs 1 through 128 with the same force and effect as if more

fully set forth at length herein.

130.    The conduct of DET. COTE, DET. CALLOWAY, DET. SLATER, DET.

GIL, DET. DOMINGUEZ, JOHN DOE, and SGT. TIRADO stated herein occurred

while they were on duty and in uniform, in and during the course and scope of their

duties and functions as officers in the NYPD, and while they were acting as agents,

officers, servants, and employees of the CITY OF NEW YORK.  As such, the CITY

OF NEW YORK is liable to Plaintiff pursuant to the common law doctrine of

*respondeat superior.*

## FOURTEENTH CAUSE OF ACTION
### (*Monell* Claim against the
### City of New York for Liability)

131.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 130 with the same force and effect as if more fully set forth at length herein.

132.   The CITY OF NEW YORK through the NYPD had in effect, both before and at the time of the events stated in this complaint, several interrelated *de facto* policies, practices and customs.  These policies, practices and customs included the failure to properly supervise, train, and instruct police officers with respect to proper techniques of stopping and questioning individuals and adequate evidence required to arrest a suspect and charge criminal actions.

133.   Additionally, the NYPD maintains a widespread practice of violating the First Amendment rights of individuals to, without interfering with police activity, record NYPD officers performing official duties.

134.   The CITY OF NEW YORK, through its failure to enact or enforce policies to prevent police officer violation of First Amendment rights, tacitly endorses NYPD practices, which allowed NYPD officers to violate Plaintiff's exercise of his First Amendment rights when they arrested Plaintiff for recording his mother's arrest.

135.   The CITY OF NEW YORK's interrelated polices, practices and customs, separately and/or together, were implemented with deliberate indifference,

and were a direct and proximate cause of the Plaintiff's Constitutional violations and injuries, as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a.    As to the First through Fourteenth Causes of Action, that the jury find and the Court adjudge and decree that Plaintiff shall recover compensatory damages in the sum of $1,000,000 against the individual defendants and the CITY OF NEW YORK, jointly and severally, together with interest and costs; and punitive damages in the sum of $1,000,000.00 against the defendants, jointly and severally;

b.    That Plaintiff recover the cost of the suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

c.    That Plaintiff is granted such other and further relief as the Court deems just and equitable.

Dated:      New York, New York
            April 21, 2017

PERLMUTTER & MCGUINNESS, P.C.

By: _____
            Daniel A. McGuinness

260 Madison Avenue, Suite 1800
New York, New York 10016
Tel: (212) 679-1990
Fax: (888) 679-0585
Attorneys for Plaintiff VICTOR ORTIZ

-24-